IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDOLPH MUSE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 02-1277 |
| | ) | |
| C.O. JOHN ZUZO and C.O. CHARLES ROSCO, | ) | |
| | ) | |
| | ) | Magistrate Judge Lisa |
| Defendants | ) | Pupo Lenihan |
| | ) | |
| | ) | Doc. No. 46 |

**MEMORANDUM OPINION**

Randolph Muse (Plaintiff), was incarcerated in SCI-Greensburg. While there, he alleges that the two Defendants, who were guards, used excessive force against him. The Defendants have filed a motion for summary judgment, asserting three grounds: 1) there is no genuine issue of fact about whether they utilized excessive force; 2) Plaintiff procedurally defaulted his claims because he failed to exhaust his administrative remedies and; 3) they are entitled to qualified immunity.  As none of the grounds merit the grant of summary judgment, the motion will be denied.

**A.   Relevant Procedural History**

The parties have consented to have this case adjudicated by a magistrate judge.  Doc. 32.  This case was the subject of previous proceedings, including two reports and recommendations. Doc. Nos. 15 & 24.  Familiarity with those reports is presumed.

Plaintiff brings this action against two corrections officers,
John Zuzo and Charles Rosco who were guards at SCI-Greensburg
where Plaintiff was incarcerated.   Plaintiff alleges that on
August 1, 2000, during a disciplinary hearing, the two Defendants
assaulted  him when he refused to sit down because of a bad back.
Doc. 9  at ¶¶ 10-21.  As a result of the assault, he was weakened
with pain and when released from the grasp of the Defendants, he
fell into his cell, hitting his head, which caused a wound that
required 25 stitches to close. See id., ¶ 21.

Previously, Defendants filed a motion for summary judgment
(Doc. 19) based upon Plaintiff's alleged failure to exhaust
administrative remedies and a brief in support.  Doc. 20.
Plaintiff filed a response, Doc. 22, and a brief in support, Doc.
23, in which he claimed that at the time he filed this suit, he
was no longer a prisoner and, therefore, the exhaustion
requirement of the PLRA no longer applied to him.  The Court
agreed with Plaintiff that the PLRA exhaustion requirement did
not apply to him insofar as at the time of filing the instant
civil action, Plaintiff was no longer a prisoner.  Doc. Nos. 24 &
27.

Until February 2004, Plaintiff had been proceeding pro se,
but in February, Attorney Angus Love, of the Pennsylvania
Institutional Law Project, entered his appearance on behalf of
Plaintiff.  Doc. 25.

After conducting discovery, Defendants, represented by the Pennsylvania Attorney General's office, filed a motion for summary judgment, Doc. 46, and a brief in support.  Doc. 47. Plaintiff, through counsel, filed a brief in opposition to the Defendants' motion for summary judgment. Doc. 53.

**B. Applicable Legal Principles**

Summary judgment may not be entered unless, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c).  Summary judgment may be granted against a party who fails to adduce evidence of facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Only after that burden has been met, must the non-moving party set forth "specific facts showing that there is a *genuine issue for trial* . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of

law.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986).  The non-moving party may not rest upon mere
denials of the facts identified by the movant, nor upon the vague
and amorphous argument that the record somewhere contains facts
sufficient to support its claims. Childers v. Joseph, 842 F.2d
689 (3d Cir. 1987).  Instead, the non-moving party must point to
where in the summary judgment record there is evidence that
creates a genuine issue of material fact concerning the elements
for which he bears the burden.  See Celotex Corp. v. Catrett.
For purposes of summary judgment, an issue is genuine only if the
evidence is such that a reasonable jury could return a verdict
for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242 (1986).  "Where the record taken as a whole could not
lead a reasonable trier of fact to find for the non-moving party,
there is no genuine issue for trial."  Matsushita, 475 U.S. at
587.  The inquiry involves determining whether the evidence
presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail as
a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d
Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson,
477 U.S. at 251-52).

    **C.  Discussion**

        **1.  Eighth Amendment Excessive force**

The landmark Supreme Court case in the Eighth Amendment excessive force area is <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992). The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id</u>. at 6-7.  In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim. <u>See</u> <u>id</u>. at 22-23 (Thomas, J., dissenting)("In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious deprivation at all.  'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.'  *Ibid.*  Ascertaining prison officials' state of mind, in other words, is the *only* relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . . The sum and substance of an Eighth Amendment violation, the Court asserts, is  'the unnecessary and wanton infliction of pain.'  This formulation has the advantage, from the Court's perspective, of eliminating the objective component.")(some citations omitted and quotation marks modified); <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2000)("In *Hudson*, the Court distinguished between prisoner conditions-

of-confinement and medical-deprivation claims, on the one hand,

and wanton use of unnecessary force claims on the other.

Although the former kind of claim cannot survive without evidence

that a deprivation was 'harmful enough' . . . , the latter kind

of claim has no such requirement").   Accordingly, to establish

an Eighth Amendment excessive force claim, the plaintiff must

only adduce evidence that the force used was applied not in a

good-faith effort to maintain or restore discipline, but

maliciously and sadistically to cause harm.[1]

_____

[1]   This is not to say that a findfinder at trial must
disregard the extent of the injuries suffered by a plaintiff.  As
the Supreme Court observed in Hudson:

> Under the *Whitley* approach, the extent of injury
> suffered by an inmate is one factor that **may** suggest
> 'whether the use of force could plausibly have been
> thought necessary' in a particular situation, 'or
> instead evinced such wantonness with respect to the
> unjustified infliction of harm as is tantamount to a
> knowing willingness that it occur.'  475 U.S., at 321,
> 106 S.Ct., at 1085.   In determining whether the use of
> force was wanton and unnecessary, it may also be proper
> to evaluate the need for application of force, the
> relationship between that need and the amount of force
> used, the threat "reasonably perceived by the
> responsible officials," and "any efforts made to temper
> the severity of a forceful response." *Ibid.*  The
> absence of serious injury is therefore relevant to the
> Eighth Amendment inquiry, but does not end it."

Hudson, 503 U.S. at 7 (emphasis added).  However, saying, in
dicta, that the absence of serious injury is **relevant** to an
Eighth Amendment excessive force inquiry is not to say that some
quantum of injury is a necessary component of an excessive force
claim.  See, e.g., Brooks v. Kyler, 204 F.3d at 104 ("Following
*Hudson*'s focus on the force used, as opposed to the injury
inflicted, we conclude that although the degree of injury is
relevant for any Eighth Amendment analysis, there is no fixed
minimum quantum of injury that a prisoner must prove that he
suffered through objective or independent evidence in order to
state a claim for wanton and excessive force.").

Although it is true that de minimis use of **force**, which is itself not repugnant to human decency, does not state an Eighth Amendment claim of excessive force, it does not necessarily follow that infliction of de minimis **injury** fails to state an Eighth Amendment excessive force claim.  See, e.g., Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"); Id. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.   See *Whitley, supra,* 475 U.S., at 327, 106 S.Ct., at 1088.   This is true whether or not significant injury is evident."); Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) ("*de minimis* injuries do not necessarily establish *de minimis* force.").

The summary judgment record reveals that at his deposition, Plaintiff testified that while handcuffed behind his back, two guards assaulted him for his refusal to obey an order to sit down. Specifically, Plaintiff testified that Defendant Zuzo, stuck his knee in Plaintiff's lower back and then Defendant Rosco came over and punched Plaintiff in his ribs.  Doc. 46, Attachment F at 12.  Apparently, Plaintiff fell to the floor because he also testified that the two defendants started kicking him and

punching him while on the floor.  Id.  Defendants, on the other

hand, deny that they engaged in any of the actions about which

Plaintiff had testified.  See, e.g., Doc. 46, Att. H at ¶ 7

(Zuzo's affidavit)("I did not at any time punch, kick, nor place

a knee in the back of inmate Muse.  I did not use excessive

force."); id., Att. I at ¶ 7(Rosco's affidavit)("I did not at any

time punch, kick, nor place a knee in the back of inmate Muse.  I

did not use excessive force.").  The Court finds this summary

judgment record creates a genuine issue of material fact with

respect to whether the Defendants engaged in the conduct

Plaintiff alleged and whether this conduct amounted to an

"unnecessary and wanton infliction of pain."  Hudson, 503 U.S. at

10.

Defendants appear to argue that, even assuming the accuracy

of Plaintiff's description of the events, their use of force was

not excessive given that Plaintiff had created a prison

disturbance by his refusal to obey and the force utilized was

necessary to restore prison discipline.  Doc. 47 at 4.

To the extent that the Defendants rest on the claim that

this "prison disturbance" justified their use of force, the court

may even accept that the use of some force was required.

Nevertheless, the amount of force, recounted in Plaintiff's

deposition, presents a jury question of whether excessive force

was utilized when one considers that throughout the alleged

beating of the Plaintiff he had his hands in handcuffs behind his

back.   See Smith v. Mensinger, 293 F.3d at 649 ("Punching and

kicking someone who is handcuffed behind his back and under the

control of at least six prison guards as he is being thrown into

cabinets and walls is 'repugnant to the conscience of mankind,'

absent the extraordinary circumstances necessary to justify that

kind of force.").   In light of the Plaintiff's deposition

testimony and the uncontroverted fact that Plaintiff was

handcuffed throughout the incident, a jury question is presented

on this record as to whether the force utilized by the Defendants

"was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm."

Hudson, 503 U.S. at 6-7.   Accordingly, Defendants' summary

judgment motion will be denied on this ground.

### 2.  Plaintiff's alleged procedural default

The next issue Defendants raise is that Plaintiff

procedurally defaulted his excessive force claim because he

failed to exhaust his administrative remedies.   Doc. 47, at 6.

As pointed out by Plaintiff, the Court has previously addressed

the issue of administrative exhaustion, finding that because

Plaintiff was not a prisoner at the time of his filing this civil

action, the administrative exhaustion requirement was not

applicable to him.   Nor is the Court inclined to reconsider this

9

ruling even if the doctrine of the law of the case[2] would permit

it to do so.

Even if the Court were to reconsider its position, it would

still deny Defendants' motion for summary judgment. In <u>Spruill v.</u>

<u>Gillis</u>, 372 F.3d 218, 230 (3d Cir. 2004), the Court of Appeals

declared that failure to exhaust the Department of Corrections

administrative remedies may result in a procedural default of a

prisoner's claims.   However, the Court of Appeals has also

declared that the exhaustion requirement does not apply to

plaintiffs, who at the time of the filing of the federal civil

action are no longer prisoners. <u>See</u>, <u>e.g.</u>, <u>Ahmed v. Dragovich</u>,

297 F.3d 201, 210 (3d Cir. 2002)("The Commonwealth conceded at

oral argument that a prisoner who has been released is not

precluded by the PLRA from filing a § 1983 suit for incidents

concerning prison conditions which occurred prior to his release.

This view, which we adopt, follows the language of § 1997e(a)").

<u>See</u>, <u>also</u>, <u>Greig v. Goord</u>, 169 F.3d 165, 167 (2d Cir. 1999);

<u>Harris v. Garner</u>, 216 F.3d 970, 979-80 (11th Cir. 2000); <u>Janes v.</u>

<u>Hernandez</u>, 215 F.3d 541, 543 (5th Cir. 2000).   This Court has

already ruled that the exhaustion requirement does not apply to

Plaintiff.  The parties do not provide any analysis of the

---

[2]   "Under this doctrine, a court should not reopen issues
decided in earlier stages of the same litigation. The doctrine
does not apply if the court is 'convinced that [its prior
decision] is clearly erroneous and would work a manifest
injustice.'"  <u>Agostini v. Felton</u>, 521 U.S. 203, 236 (1997).

significance of the procedural default doctrine for prisoners

who, at the time of the filing of their civil action, are no

longer prisoners.  Defendants simply assume procedural default

applies in such a situation.  Plaintiff argues that exhaustion

does not apply, implying therefore, that procedural default

likewise does not apply.  This Court's own independent research

has not located any cases which address this scenario.[3] This case

does raise an interesting question of how the procedural default

doctrine applies, if at all, to prisoners who file their suits

after ceasing to be prisoners. However, in the absence of any

authority addressing this question, this Court believes that the

procedural default doctrine, derived, as it is, from the

exhaustion doctrine, does not apply to Plaintiff because when he

filed this suit, the exhaustion requirement did not apply to him.

Hence, summary judgment should be denied to Defendants on this

ground.[4]

---

[3]   The Court recognizes the anomaly this creates.  For a
prisoner who files his suit while yet a prisoner and who fails to
exhaust, he may well have engaged in a procedural default and his
claim would be barred.  In contrast, where a prisoner files his
suit at a time that he is no longer a prisoner, and he failed to
exhaust, such would not bar the former prisoner's suit.  This
seems to provide an incentive to a prisoner who is coming to the
end of his term to not exhaust, in apparent contradiction to the
whole purpose of applying the procedural default doctrine to
civil rights cases, i.e., to encourage exhaustion and to cut down
on prisoner suits. See, e.g., Spruill, 372 F.3d at 230.

[4]   The Court might have considered certifying the question
about the applicability of the procedural default doctrine to
prisoners who file their civil action after they cease to be

### 3.   Qualified Immunity

Lastly, Defendants claim that they are entitled to qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability;  and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Id</u>.  In performing a qualified immunity analysis, the first inquiry is to ask whether when taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right.   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  As presaged by the Eighth Amendment analysis above, the Court concludes that if the facts as alleged by Plaintiff are correct, which the Court is constrained to assume at this time, then the Defendants' conduct, as testified to by Plaintiff, violated a constitutional right.

---

prisoners.  <u>See</u> 28 U.S.C. § 1292 (statute providing for certification of interlocutory appeals).  However, on this record, it would be unwise to do so.  Although Defendants provided, in an earlier motion for summary judgment, an affidavit that no grievances were filed, Plaintiff had contended that he filed a first level grievance that was never responded to.  Doc. 13 at ¶ 2.  Thus, there appears to be a dispute as to whether he did attempt to exhaust or whether exhaustion was hampered.

If a court answers yes to this first question, the second
inquiry is "to ask whether the right was clearly established."
Id.  The Court in Saucier, a case involving excessive force under
the Fourth Amendment, explained this second step as follows:

> This inquiry, it is vital to note, must be undertaken
> in light of the specific context of the case, not as a
> broad general proposition . . . .
>      In this litigation, for instance, there is no
> doubt that Graham v. Connor, supra, clearly establishes
> the general proposition that use of force is contrary
> to the Fourth Amendment if it is excessive under
> objective standards of reasonableness. Yet that is not
> enough. Rather, we emphasized in Anderson "that the
> right the official is alleged to have violated must
> have been 'clearly established' in a more
> particularized, and hence more relevant, sense: The
> contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is
> doing violates that right." 483 U.S., at 640, 107 S.Ct.
> 3034. The relevant, dispositive inquiry in determining
> whether a right is clearly established is whether it
> would be clear to a reasonable officer that his conduct
> was unlawful in the situation he confronted. *See Wilson
> v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143
> L.Ed.2d 818 (1999) ("[A]s we explained in *Anderson*, the
> right allegedly violated must be defined at the
> appropriate level of specificity before a court can
> determine if it was clearly established").

Id. at 201-02.

Here, the Court concludes that it would be clear to a
reasonable official that kicking and punching an inmate who is on
the floor and handcuffed with his hands behind his back merely
for disobeying an order to sit down or even for swearing at
corrections officers was unlawful.  Cf. Smith v. Mensinger, 293
F.3d at 649.  Hence, Defendants have not shown entitlement to
summary judgment based upon a qualified immunity defense.

As none of the bases relied upon by the Defendants merit the grant of summary judgment, Defendants' motion for summary judgment is **DENIED**.

 

                                         /s/Lisa Pupo Lenihan
                                         Lisa Pupo Lenihan
                                         U.S. Magistrate Judge

Dated: December 12, 2005

 

Randolph Muse
5643 West Diamond St.
Philadelphia, PA 19131

Angus R. Love
Pennsylvania Institutional Law Project
924 Cherry Street
Suite 523
Philadelphia, PA 19107

Craig E. Maravich
Office of the Attorney General
564 Forbes Avenue
6th Floor, Manor Complex
Pittsburgh, PA 15219
(412) 565-7680

Susan J. Forney
Office of Attorney General
Fifth Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219
(412) 565-3520